UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DIANNA H.,<br><br>　　　　　Plaintiff,<br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | CASE NO. 3:24-cv-05630-TL<br><br>ORDER REVERSING, IN PART, AND REMANDING THE COMMISSIONER'S FINAL DECISION |

Plaintiff Dianna H. seeks review of the denial of her application for social security benefits. This matter is before the Court on Plaintiff's Complaint for Judicial Review of Social Security Benefits. Dkt. No. 10. Plaintiff contends the Administrative Law Judge ("ALJ") erred by rejecting the medical opinion of Margaret Grey, M.D., as the ALJ had insufficient evidence to properly assess the opinion. *Id.* at 1. As discussed below, the Court REVERSES IN PART the Commissioner's final decision and REMANDS the matter for further administrative proceedings under the fourth sentence of 42 U.S.C. § 405(g).

# I. BACKGROUND

Plaintiff is 54 years old (Dkt. No. 6-5[1] at 14 (Application Summary for Disability Insurance Benefits)), has at least a high school education (Dkt. No. 6-2 at 67 (Hearing Transcript)), and has worked in a variety of positions including security guard, delivery driver, tool room attendant, shopper, retail salesclerk, health aide, automotive mechanic, emergency medical technician, and EMT dispatcher (*Id.* at 70, 72). On July 7, 2022, Plaintiff applied for social security benefits, alleging disability as of July 3, 2022. Dkt. No. 6-2 at 14 (Administrative Decision). Plaintiff's applications were denied initially and on reconsideration on May 1, 2023, and October 19, 2023, respectively. *Id.* On March 7, 2024, an ALJ held a hearing at which Plaintiff appeared pro se. *Id.*

On May 2, 2024, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 14–15. Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since July 3, 2022. *Id.*

**Step two:** Plaintiff has the following severe impairments: atrial fibrillation, bilateral knee conditions, obesity, PTSD, depressive disorder, and anxiety disorder.[3] *Id.*

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[4] *Id.* at 17.

**Residual Functional Capacity:** Plaintiff can perform light work except that she must avoid concentrated exposure to hazards, temperature extremes, and pulmonary irritants. *Id.* at 20.

**Step four:** Plaintiff cannot perform past relevant work. *Id.* at 26.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled. *Id.* at 27.

---

[1] Dkt. Nos. 6-1 through 6-15 comprise the Social Security Certified Administrative Record.

[2] *See* 20 C.F.R. §§ 404.1520, 416.920.

[3] *See* 20 C.F.R. § 404.1520(c).

[4] *See* 20 C.F.R. § 404, subpt. P, App. 1.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. *Id.* at 2 (Notice of Appeals Council Action).

## II.   LEGAL STANDARD

### A.   Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if and only if the ALJ's decision was based on legal error or not supported by substantial evidence in the record. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020); *see also Havens v. Kijakazi*, No. 21-35022, 2022 WL 2115109, at *1 (9th Cir. June 13, 2022) (applying the standard and reversing ALJ's decision). The ALJ is responsible for evaluating evidence, in part by resolving conflicts in medical testimony and other contradictions and ambiguities in the record. *See Ford*, 950 F.3d at 1149 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Where evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational. *See id.* at 1154. The Court "must consider the entire record as a whole" and may not affirm the ALJ's decision "simply by isolating a 'specific quantum of supporting evidence.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

Finally, this Court "may not reverse an ALJ's decision on account of a harmless error." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1520c(c)(2)). "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination'"; however, where an ALJ did not consider certain competent evidence at all, a reviewing court "cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout v. Comm'r*,

*Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). In *Marsh*, even though "the district court gave persuasive reasons to determine harmlessness," the Ninth Circuit reversed and remanded for further administrative proceedings, noting that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Marsh*, 792 F.3d at 1173 (citing 20 C.F.R. § 404.1527(d)(1)–(3)).

**B.     The "Disabled" Determination**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Ford*, 950 F.3d at 1148.

To determine whether a claimant is disabled within the meaning of the Social Security Act (and eligible for benefits), an ALJ follows a five-step sequential evaluation pursuant to 20 C.F.R. § 404.1520(a):

(1)    the claimant must not be engaged in "substantial gainful activity";

(2)    the claimant's impairment or combination of impairments must be severe enough to significantly limit their "physical or mental ability to do basic work activities";

(3)    the ALJ considers whether the claimant's impairment or combination of impairments meet or equal the criteria of an impairment in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). The evaluation terminates in the claimant's favor if the ALJ finds the claimant's impairments meet or equal the criteria for one of the listed impairments, which are considered "severe enough to prevent an individual from doing any gainful activity";

(4)    if the impairments do not meet or equal an impairment listed in the regulations, the claimant's "residual functional capacity" ("RFC") is determined by the ALJ, and the claimant must then demonstrate that they cannot perform their "past relevant work" and

(5)    the claimant must not be able to make an adjustment to other work.

*See Ford*, 950 F.3d at 1148–49. If the claimant fails to make the required showing at any step,

the ALJ's inquiry ends, and the claimant is found to not have a disability under the Social Security Act. The burden of proof is on the claimant at steps one through four, but at the fifth step, the burden shifts to the agency to prove that "the claimant can perform a significant number of other jobs in the national economy." *Id.* at 1149 (citation omitted).

### III. PRELIMINARY MATTER

Before addressing the substance of the issue at hand, the Court notes that Plaintiff's Opening Brief fails to discuss the applicable standards, cite any legal authority for its assertions, or engage meaningfully with the ALJ's analysis of Dr. Gray's opinion. In fact, Plaintiff's three-paragraph brief and two-paragraph reply are skeletal and inadequate in every way. *See generally* Dkt. Nos. 10, 13. Collectively, they contain only four citations to the administrative record, no case law, and a single, inapposite statutory citation about what the Appeals Council, not the District Court, may do.[5] The Court further observes that Plaintiff's counsel has already been admonished on numerous occasions by several other judges in this district for similar failures of diligence that have risked prejudicing his clients. *See, e.g., Janeen D. v. Comm'r of Soc. Sec.*, No. C20-5876-RSM, 2021 WL 2411619, at *1 n.1 (W.D. Wash. June 14, 2021) (Plaintiff's counsel "risk[ed] prejudicing his client by waiving an issue not adequately raised in his opening brief."); *Toni M. v. Comm'r of Soc. Sec.*, No. C20-5856-RSM, 2021 WL 1625251, at *1 n.1, n.3 (W.D. Wash. Apr. 27, 2021) (counsel's failure to cite to the record "raised the specter of prejudicing his client"; misstatement of legal standard as requiring ALJ give only "germane" reasons for rejecting claimant's symptom testimony demonstrated "inadequate level of diligence"); *Rebecca V. v. Comm'r of Soc. Sec.*, No. C20-5790-RSM, 2021 WL 1140657, at *2 n.1 (W.D. Wash. Mar. 25, 2021) ("Plaintiff's counsel is reminded to provide citations to the

---

[5] Confoundingly, this citation is the only substantive portion of Plaintiff's Opening brief not copied directly from the appeals council brief. *Compare* Dkt. No. 6-6 at 189–90 (Appeals Council Brief), *with* Dkt. No. 10 (Opening Brief).

ORDER REVERSING, IN PART, AND REMANDING THE COMMISSIONER'S FINAL DECISION - 5

record to support factual assertions."); *Theresa R. v. Comm'r of Soc. Sec.*, No. C20-5705-RAJ, 2021 WL 913039, at *1 n.1 (W.D. Wash. Mar. 10, 2021) (failure of diligence where counsel lowered legal standard to "germane" against client's interest); *Scott D. v. Comm'r of Soc. Sec.*, No. C20-5354-RAJ, 2021 WL 71679, at *1 n.1 (W.D. Wash. Jan. 8, 2021) (same); *Melissa D. v. Comm'r of Soc. Sec.*, No. C20-5236-RSM, 2020 WL 7418078, at *1 n.1 (W.D. Wash. Dec. 18, 2020) (same, over four months before same admonition in *Toni M.*); *Bradley S. v. Comm'r of Soc. Sec.*, No. C20-5328-RAJ, 2020 WL 7041552, at *3 (W.D. Wash. Dec. 1, 2020) (where headings referred to one doctor but text discussed another, unmade arguments related to first doctor's testimony were waived; counsel reminded of duty of diligence). Even when not admonishing Plaintiff's counsel directly, judges have frequently noted the waiver of arguments that he briefed inadequately or raised too late. *See, e.g.*, *Dong Ok K. v. Comm'r of Soc. Sec.*, No. C20-5791-RAJ, 2021 WL 1221104, at *2 (W.D. Wash. Apr. 1, 2021); *Eric F. v. Comm'r of Soc. Sec.*, No. C20-0087-RAJ, 2020 WL 5653335, at *3 (W.D. Wash. Sept. 23, 2020); *Sarah P. v. Comm'r of Soc. Sec.*, No. C18-5575-RSM-MLP, 2019 WL 2108102, at *2 n.5 (W.D. Wash. Mar. 27, 2019) (arguments waived when raised for first time in reply), *report and recommendation adopted, and case dismissed with prejudice, sub nom. Palmer v. Comm'r of Soc. Sec.*, No. C18-5575-RSM, 2019 WL 2103272 (W.D. Wash. May 14, 2019). Some of counsel's lapses have cost his clients the opportunity to pursue their claims. *See, e.g.*, *Evans J. S. v. Comm'r of Soc. Sec.*, No. C24-5315-RSM, 2024 WL 4202162, at *2 (W.D. Wash. Sept. 16, 2024) (appeal dismissed with prejudice because counsel missed statutory deadline and cited no authority supporting an exception); *Margaret T. v. Comm'r of Soc. Sec.*, No. C20-5340-RAJ, 2020 WL 7122850, at *1 (W.D. Wash. Dec. 4, 2020) (appeal dismissed with prejudice where counsel "failed to allege an actual error").

"Congress enacted . . . SSDI benefits provisions of the Social Security Act to protect vulnerable individuals from income insecurity." *Cooper v. Soc. Sec. Admin.*, 131 F.4th 995, 1018 (9th Cir. 2025) (citing *Mathews v. De Castro*, 429 U.S. 181, 185–86 (1976)). Counsel representing claimants seeking their social security benefits provide an important service to a particularly vulnerable population. Yet and still, "[o]ur adversarial system relies on the advocates to inform the discussion and raise the issues to the court. . . . [T]he term 'brief' . . . does not mean opaque nor is it an exercise in issue spotting. However much we may importune lawyers to be brief and to get to the point, we have never suggested that they skip the substance of their argument in order to do so." *Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003).

"It is not the job of this Court to scour the record to find evidence supporting a party's claims."[6] *Toni M.*, 2021 WL 1625251, at *4 n.3; *see also Dennis T. v. Comm'r of Soc. Sec.*, No. C19-5500-RAJ, 2020 WL 91491, at *2 (W.D. Wash. Jan. 8, 2020) (same counsel as instant case) ("It is not enough merely to present an argument in the skimpiest way, and leave the Court to do counsel's work by framing the argument and putting flesh on its bones through a discussion of the applicable law and facts."). Here, lest Plaintiff be irreparably punished for counsel's lack of diligence, the Court has scoured the record nonetheless. However, should counsel appear before this Court again, arguments alleged without support from the record may not be considered. Moreover, the Court may find it necessary to (a) strike any inadequate briefing with an order to refile with additional support and/or (b) impose other sanctions, including rejecting certain requests for attorney's fees. As Plaintiff's counsel has been previously advised, "[t]he art of advocacy is not one of mystery. . . . We require contentions to be accompanied by reasons." *Bradley S.*, 2020 WL 7041552, at *3 (quoting *Indep. Towers*, 350 F.3d at 929); *see also Kathleen*

---

[6] Here, the administrative records consists of over seven thousand pages. *See* Dkt. No. 6-1.

*G. v. Comm'r of Soc. Sec.*, No. C20-461-RSM, 2020 WL 6581012, at *4 (W.D. Wash. Nov. 10, 2020) (quoting same where Plaintiff's counsel "failed to adequately challenge any opinions in the record on Plaintiff's sitting restrictions").

## IV. DISCUSSION

Plaintiff asserts that the ALJ erred when failing to credit fully the opinions from her primary care physician, Margaret Gray M.D., regarding her cardiac health, and that more medical evidence was needed from the period after April 2023 in order for the ALJ to properly assess Dr. Gray's opinion. Dkt. No. 10 at 2–3. Defendant contends that the ALJ properly found that Dr. Grey's opinion was not persuasive based on substantial evidence in the record (Dkt. No. 12 at 3–4), and that the ALJ's duty to develop the record more fully was not triggered because the record regarding Plaintiff's cardiac condition was not ambiguous or inadequate (*Id.* at 5).

### A. Whether the ALJ Erred in Rejecting the Opinion of Dr. Gray

"In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). For claims filed after revised regulations took effect on March 27, 2017, "there is not an inherent persuasiveness to evidence from [government consultants] over [a claimant's] own medical source(s), and vice versa." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (alterations in original) (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (2017)). With regard to the medical source's relationship with the claimant, "an ALJ can . . . consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's

records," but does not need to make specific findings regarding these factors. *Id.* (citing 20 C.F.R § 404.1520c(c)(3)(i)–(v), (b)(2)). While ALJs are no longer required to provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, they "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* "'The most important factors that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Id.* (quoting 20 C.F.R. § 404.1520c(a)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id.* at 791–92 (omission in original) (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (omission in original) (quoting 20 C.F.R § 404.1520c(c)(2)). "The agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or source . . . and 'explain how it considered the supportability and consistency factors' in reaching these findings." *Id.* at 791 (cleaned up) (quoting 20 C.F.R. § 404.1520c(b)).

### 1. Whether Substantial Evidence Supports the ALJ's Rejection of Dr. Gray's Opinion

The ALJ's decision stated:

> I do not find persuasive the April 2023 opinion of Dr. Grey, MD, who assessed that, beginning in February 2023, the claimant was limited to a range of light work; would need extra breaks during the day; and would miss more than one day of work each week (see B35F/3-5). The opinion is conclusory, insufficiently supported, and inconsistent with the overall evidence.

Dkt. No. 6-2 at 24 (Administrative Decision).

The record the ALJ refers to as "the April 2023 opinion of Dr. Grey, MD" comprises two short documents requested by Plaintiff in support of an attempted return to work at Amazon

following surgery to have a pacemaker implanted on February 23, 2023. Dkt. No. 6-15 at 869 (request), 1168–71 (opinions); *see also id.* at 602–03 (documenting "[p]ermanent placemaker implantation . . . for symptomatic bradycardia and sinus pauses w/ near syncope"). The first of the two documents is a letter signed by Dr. Gray, asking Plaintiff's employer to excuse her absence for the weeks following her surgery. Dkt. No. 6-15 at 1168. The second document is Amazon's three-page "Healthcare Provider Request for Information Form," filled out by Dr. Gray on April 18, 2023, in support of Plaintiff's request for workplace accommodations upon returning to work. *Id.* at 1169–71. Here Dr. Gray opined, in relevant part:

- Plaintiff was currently able to return to work with certain accommodations and exertional restrictions on lifting, stair-climbing, squatting, kneeling, crawling, and overhead reaching (but not walking or standing). *Id.* at 1170.

- Plaintiff's "[c]ondition results in paroxysmal symptoms and may require anywhere from no additional breaks, to 2-3 15 minute breaks per day, to 1+ days off per week." *Id.* These accommodations were suggested on a temporary basis to be reevaluated by Dr. Gray after 12 weeks. *Id.* at 1169.

- Plaintiff "has psychiatric comorbidities that occasionally necessitate days off, but do not require regular workplace accommodations." *Id.* at 1171.

- "Employee's condition is disabling in severity when paroxysms occur and can be triggered by over-exertion, but her current medications and therapies have symptoms under reasonable control for return to work as long as she does not exceed moderate exertion." *Id.*

The ALJ took exception with the "rather extreme limitation" that, as she paraphrased, Plaintiff "would need extra breaks during the day; and would miss more than one day of work each week."[7] Dkt. No. 6-2 at 24. The ALJ also faulted Dr. Gray for not pointing to clinical

---

[7] Dr. Gray's restrictions on Plaintiff's lifting, stair-climbing, squatting, kneeling, crawling, and overhead reaching (Dkt. No. 6-15 at 1170) appear to be the ALJ's basis for stating that Dr. Gray's opinion restricted Plaintiff to "light work" (Dkt. No. 6-2 at 24), although Dr. Gray does not adopt such a prescription. *See generally* Dkt. No. 6-15. Regardless, the ALJ herself ultimately assigned plaintiff an RFC limiting her to light work and does not appear to reject this portion of Dr. Gray's opinion. Nor does Plaintiff object to this portion of the ALJ's decision.

findings, testing results, or other objective evidence to support this "extreme limitation." *Id.* But Dr. Gray's actual opinion on accommodations is more restrained: that Plaintiff *"may require anywhere from no additional breaks, to 2–3 15 minute breaks per day, to 1+ days off per week"* in the twelve weeks immediately following her return to work after surgery, and then that need could be reassessed. Dkt. No. 6-15 at 1169–70. Dr. Gray further opined that Plaintiff's medications and therapies had her symptoms reasonably under control "as long as she does not exceed moderate exertion." *Id.* at 1171. With these qualifications, Dr. Gray offered a conservative, general opinion that did not, and logically would not, depend on test results or specific clinical findings, but was supported by Dr. Grey's knowledge about Plaintiff's diagnosis and comorbidities, the nature of her cardiac condition, possible triggers, and the unpredictability of how Plaintiff's healing might progress.

The ALJ further criticized Dr. Gray's opinion as "inconsistent with the record after April 2023." Dkt. No. 6-2 at 24. This conclusion is based on two factors: (a) that Plaintiff had testified in the hearing that her symptoms improved after pacemaker placement and (b) that "the evidence after February 2023 . . . apart [from] a brief episode of atrial fibrillation in April 2023 (B31F/6, 47-49)[8] indicates generally good control of the claimant's symptoms." *Id.* The ALJ appears to have assumed that Plaintiff's April 2023 hospitalization was her only significant cardiac event since pacemaker placement. But this assumption is made in the absence of a cardiac medical record past that time (or any medical records after August 2023) and despite Plaintiff's testimony that recent episodes of chest pain and/or atrial fibrillation had caused her to leave work at least twice—once on February 17, 2024, and once on March 1, 2024. Dkt. No. 6-2 at 63–65, 73–74.

---

[8] Here the ALJ cites records describing an overnight hospitalization from April 23–24, 2023, which occurred after Plaintiff developed chest pain and palpitations while working security at a Mariners game, was examined by the medical team on site, and was sent to the hospital in atrial fibrillation. Dkt. No. 6-15 at 462 (Medical Record).

ORDER REVERSING, IN PART, AND REMANDING THE COMMISSIONER'S FINAL DECISION - 11

Similarly, the fact that Plaintiff experienced improvement after receiving a pacemaker does not, without more, contradict that the proposition that she may continue to need rest during the workday, or even some days off, to avoid debilitating cardiac episodes. That Plaintiff may require breaks even in a light-work or sedentary job is evidenced by the fact that the episode of atrial fibrillation for which she was hospitalized in April 2023 was triggered while working stadium security (*Id.* at 520), and by her testimony that when she entered atrial fibrillation on February 17, 2024, she was "just walking" and had not exerted herself in any way (*Id.* at 65). Moreover, the ALJ's summary of Plaintiff's condition as "under generally good control" is not supported by sufficient evidence where one of the three supporting citations is to inpatient notes after a cardiac crisis (which occurred when there was no exertion), and the other two lead to identical treatment notes from a single primary care visit.[9] Two periods of stability of less than two months each, with a hospitalization in between, is not, without more, substantial evidence that Plaintiff's condition was well controlled over the year following pacemaker placement (to say nothing of the earlier portion of her alleged period of disability). This is especially so given that the agency considers a cardiac impairment to be "recurrent" if it occurs just three times in a year. *See Id.* at 18 (Administrative Decision) (citing 20 C.F.R. § 404, subpt. P, App. 1 § 4.00(A)(3)(c)).

//

//

---

[9] The ALJ writes, "[t]reatment notes in April, June, and August 2023 indicate that her symptoms are well managed (B31F/105; B33F/105; B34F/24)." Dkt. No. 6-2 at 24. The first citation leads to inpatient treatment notes by cardiologist Christopher Fellows. *Id.* at 520. While Plaintiff reported that "[s]ince the pacemaker was implanted, she has done well and has had no recurrent arrhythmias to her knowledge" this statement is qualified by the context that Plaintiff was currently hospitalized overnight for a new recurrence of atrial fibrillation, a catheterization had revealed a new diagnosis of coronary disease, and Dr. Fellows was evaluating potential changes to her treatment. *Id.* The second citation, from a telephonic primary care appointment on June 7, 2023, does support that Plaintiff's condition was well controlled for the period between April 24 and June 7 (Dkt. No. 6-15 at 864); however, the ALJ's "August" citation erroneously leads again to the June 7 notes. *Id.* at 1132. There are no cardiac or primary care notes in the record from August 2023.

Accordingly, the ALJ's explanation for her rejection of the medical opinion of Dr. Gray is not supported by substantial evidence.

### 2. Whether the ALJ's Error in Rejecting Dr. Gray's Opinion was Harmless

Now the Court must consider—though the parties did not address—whether the ALJ's error in rejecting Dr. Gray's opinion was harmless. On their own, Dr. Gray's conservative statements about accommodations Plaintiff "may" need in the workplace lend less than full-throated support to Plaintiff's disability case, particularly as Dr. Gray herself stated that Plaintiff was able to return to work in April 2023 and suggested it was unlikely Plaintiff's paroxysms would be triggered by work "as long as she does not exceed moderate exertion." Dkt. No. 6-15 at 1179. However, the ALJ's error in discrediting Dr. Gray's opinion as a whole had ripple effects on the evaluation of other evidence. For example, Dr. Gray's opinion, if credited, provides support for Plaintiff's subjective account of her symptoms and limitations. Dr. Gray's opinion that Plaintiff's "condition is disabling in severity when paroxysms occur and can be triggered by over-exertion" is the only medical evidence in the administrative record that supports or even discusses any link between Plaintiff's work-related exertion and her cardiac symptoms. Further, her opinion that Plaintiff might require breaks or days off work is ultimately aligned with Plaintiff's testimony about experiencing cardiac symptoms at work in the period after her pacemaker placement to the point that she was missing shifts, leaving work early, and losing jobs. Dkt. No. 6-2 at 53–54 (Hearing Transcript). This testimony should have been evaluated in light of Dr. Grey's medical opinion that over-exertion could trigger Plaintiff's paroxysms and that her paroxysms were disabling when they occurred. *See* 20 C.F.R. § 404.1529(c)(4) ("[W]e will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled."). The Court finds the ALJ's error was not

harmless, and Plaintiff's symptom and limitation testimony should be reevaluated in light of Dr. Gray's opinion.

### B. Whether the ALJ Erred by Failing to Develop the Cardiac Medical Record

Plaintiff's opening brief purports to allege a single error: that the ALJ "erred in rejecting the opinion of Dr. Grey as the ALJ had insufficient evidence to properly assess the opinion." In fact, Plaintiff, however thinly, alleges two errors: (1) the ALJ erred in rejecting the opinion of Dr. Gray, and (2) the ALJ had insufficient evidence to properly assess Plaintiff's cardiac condition, that is, the ALJ failed to sufficiently develop the record on this issue. While Plaintiff's counsel does not identify the latter issue by name, he has made sufficiently relevant assertions for Defendant to recognize the issue and respond; thus, the Court will consider this question.

An ALJ ruling on a social security claim "has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)); *see also Alderson v. Saul*, 859 F. App'x 25, 27 (9th Cir. 2021) (mem.) (citing *Tonapetyan* in support of remand where ALJ did not adequately develop the record). This duty is heightened where a social security claimant is not represented by counsel, in which case "it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992) (per curiam) (quoting *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978)); *see also Boakye-Yiadom v. O'Malley*, No. C23-02977, 2024 WL 4485587, at *5, 8 (N.D. Cal. Aug. 20, 2024) (citing *Higbee* and *Cox* and remanding case for further development of the record with regard to plaintiff's medical history); *Jean R. v. Berryhill*, No. C18-0936, 2019 WL 2996545, at *6 (W.D. Wash. June 11, 2019) (same), *report and recommendation adopted*, No. C18-0936, 2019 WL 2996280 (W.D. Wash. July 9, 2019).

An ALJ may discharge the duty to develop the record "in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150. The ALJ's duty to supplement the record is triggered only if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). However, "[a] specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy." *Tonapetyan*, 242 F.3d at 1150. "When 'the heavy burden imposed by *Cox*' is not met, and the claimant may have been prejudiced, 'the interests of justice demand that the case be remanded.'" *Higbee*, 975 F.2d at 561 (quoting *Vidal v. Harris,* 637 F.2d 710, 714–15 (9th Cir. 1981)); *see also Nelson v. Berryhill*, No. C17-5386, 2018 WL 388591, at *2 (W.D. Wash. Jan. 12, 2018) (citing *Higbee* and remanding for further development of the record).

Plaintiff was not represented by counsel at her administrative hearing. Dkt. No. 6-2 at 14. Therefore, the ALJ had a duty to "scrupulously and conscientiously probe into, inquire of, and explore" gaps and ambiguities in the record that prevented a proper evaluation of the state of Plaintiff's health and ability to work.

The Court finds there were both ambiguities and clear gaps in the record. At the time of the administrative hearing, the medical record had not been updated since reconsideration, and, even then, it was only partially updated: the Social Security Administration requested updated records in July and September of 2023 only from the Veteran's Administration, not Plaintiff's other providers. *See* Dkt. No. 6-1 (Index) at 3; Dkt. No. 6-6 at 124, 169 (HIT Requests Nos. 1

//

//

and 2).[10] The most recent cardiac treatment notes were from Plaintiff's overnight hospitalization in April 2023. *See* Dkt. No. 6-15 at 520. After that, only the consultative examination and a primary care visit with Dr. Gray on June 7, 2023, provide any medical record related to Plaintiff's heart conditions at all. *See generally* Dkt. No. 6-14 at 1144–50; Dkt. No. 6-15 at 864. At that primary care visit, Plaintiff reported "[n]o issues with recurrent chest pain or atrial fibrillation" since her April hospitalization. Dkt. No. 6-15 at 864. During that hospitalization, Plaintiff had reported a similar period without recurrent arrythmias from the placement of her pacemaker until the episode that sent her to the hospital. *Id.* at 520. But two periods of stability, each lasting two months or less and with a cardiac crisis in between, cannot by themselves paint a clear or complete picture of Plaintiff's cardiac health between her pacemaker surgery in February 2023 and her administrative hearing in March 2024. There is non-medical evidence suggesting Plaintiff continued to experience cardiac episodes after June 7, 2023. She submitted ECG data from her smartwatch suggesting episodes of atrial fibrillation on June 8 and June 21, 2023. *Id.* at 1178–81 (Accommodations Request). She provided evidence that a follow-up visit for her pacemaker on or around September 19, 2023, revealed that she continued to enter atrial fibrillation and that her "heart-rate was in the 200's," which "explain[ed her] constan[t] fatigue." Dkt. No. 6-6 at 179 (Disability Report—Appeals). At the hearing in March 2024, Plaintiff testified that she had been contacted by her cardiologist on February 20, 2024, and told that her heart had been recorded going into atrial fibrillation with a documented heart rate as high as 206 beats per minute. Dkt. No. 6-2 at 64. Plaintiff further testified to recent episodes of chest pain

---

[10] An additional records request was generated on November 11, 2023, after Plaintiff requested an administrative hearing, but this was issued only to the VA Clinic in Silverdale, Washington, rather than the "Central Location Medical Sharing Initiative" that had previously provided records. Dkt. No. 6-6 at 175 (HIT Request No. 3). This request produced no new information, netting only a response indicating that records "could not be retrieved electronically." *Id.* at 185 (HIT Response No. 3).

and/or atrial fibrillation that had caused her to leave work early on both February 17, 2024, and March 1, 2024, with each incident followed by a period of extreme fatigue. Dkt. No. 6-2 at 63–65, 73–74. This testimony—not only about subjective symptoms of pain and fatigue but about objective medical findings by Plaintiff's cardiologist—creates ambiguity as to the extent of impairment over the year following her pacemaker surgery. Further, the fact that Plaintiff sometimes entered atrial fibrillation while asleep or without noticing (Dkt. No. 6-2 at 56, 64), which the Commissioner cites as evidence of non-impairment (Dkt. No. 12 at 4), could also suggest that Plaintiff's self-assessments of cardiac stability may have been inflated where she did not recognize symptoms (such as fatigue) as being caused by atrial fibrillation. This ambiguity, and the inadequacy of medical records to resolve it, triggered the ALJ's obligation to probe for more records from this period.

The Commissioner asserts that "the record contains treatment records from visits through late August 2023." *Id.* at 5. However, the only treatment documented in August 2023 is for psychiatric, not cardiac, care. Dkt. No. 6-15 at 1117–19 (Medical Record). Defendant also argues that "Plaintiff has had ample time to provide additional evidence pertinent to her disability claim since she retained counsel" after the ALJ rendered a decision but "has not demonstrated there is any additional relevant medical evidence to consider." Dkt. No. 12 at 5. But it is the ALJ's duty to "scrupulously and conscientiously probe the gaps and ambiguities in the record," as Plaintiff was unrepresented at her administrative hearing. *Higbee*, 975 F.2d at 561. Whether the ALJ fulfilled this obligation is a question the Court will evaluate based on the record that was before the ALJ when she ruled. As to whether further records exist, it is evident that they do. Plaintiff's testimony illuminated multiple sources of additional, up-to-date information that would have shed light on her current condition. Plaintiff testified to recent appointments with two separate cardiologists, Dr. Romeo and Dr. Swingle. Dkt. No. 6-2 at 64. Dr. Gray's June 2023 notes

indicate Plaintiff was expected to receive pacemaker follow-up care with her longtime cardiologist Dr. Fellows. Dkt. No. 6-15 at 864.

The hearing transcript also reveals that Plaintiff came to her the hearing bearing a collection of physical documents or mementos of some kind from her hospital stays related to atrial fibrillation, which she showed to the ALJ during her testimony:

> A: . . . I brought my—these are my hospital things that I had. That's all in—within two years I received all these.
> Q: That's all within two years.
> A: That's all within—
> Q: That looks like about, maybe, 20 or 25?

Dkt. No. 6-2 at 55. The ALJ noted that Plaintiff testified to "20 to 25 hospitalizations over the past two years" but appears not to have examined the items produced by Plaintiff, entered them into the record, or inquired as to why the stated number of hospital stays significantly outnumbered hospitalizations documented in the record. *Id.* at 20 (Administrative Decision). The ALJ could have left the record open after the hearing and directed Plaintiff to provide the missing records, but she did not. *Compare Robert B. v. Kijakazi*, No. C20-05109, 2021 WL 9748884, at *6 (E.D. Wash. Sept. 1, 2021) (where ALJ knew claimant had intended but failed to submit significant document, "not having left the record open to allow Plaintiff an opportunity to supplement was error"), *with Hootman v. Comm'r of Soc. Sec.*, 499 F. App'x 673, 675 (9th Cir. 2012) ("The ALJ complied with her duty to develop the record by leaving the record open for supplemental evidentiary submissions."). Nor did the ALJ attempt to contact Dr. Gray of any of Plaintiff's cardiologists for an updated record or assessment of her condition or speak to Plaintiff on the record about the importance of obtaining those records.

Because Plaintiff's cardiac treatment notes from after April 2023 are not included in the Administrative Record, it is unclear the exact effect of fully crediting these records. However, Plaintiff clearly had more than the single episode of atrial fibrillation noted by the ALJ, and

possibly was experiencing regular paroxysms that—alone or in combination with her other severe impairments—impacted her ability to work. The ALJ's error in failing to develop the cardiac medical record after Plaintiff's pacemaker surgery meant she could not adequately assess either the level of Plaintiff's impairment or the extent to which the short or long work breaks Dr. Gray said *might* be needed were in fact necessary and remained so after the peri-surgical period. An evaluation of Dr. Gray's opinion in light of an updated cardiac record may have altered the residual functional capacity the ALJ ascribed to Plaintiff, which did not provide for breaks or unscheduled absences (Dkt. No. 6-2 at 20 (Administrative Decision)), and the hypothetical the ALJ posed to the vocational expert, which indicated "no exertional limitations" (*Id.* at 70–71 (Hearing Transcript)). As it was, the vocational expert was not informed of Plaintiff's exertional limitations related to her cardiac condition (if any) and, therefore, did not have the opportunity to opine as to whether the characteristics of the jobs considered at step five would allow for such limitations. "Any hypothetical posed to the vocational expert" must include "all properly supported limitations because a 'vocational expert's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record.'" *Trejo v. Comm'r of Soc. Sec.*, No. C22-192, 2023 WL 2752194, at *4 (E.D. Cal. Mar. 31, 2023) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989)). Thus, because the Court cannot conclude that the ALJ's error in failing to develop the record related to her cardiac condition was "inconsequential to the ultimate nondisability determination," it does not find the error to be harmless. *Stout*, 454 F.3d at 1055.

C.      **Whether Plaintiff's Requested Remedy is Appropriate**

Plaintiff requests remand for *de novo* proceedings before the ALJ but cites no authority for this request. Dkt. No. 10 at 3. Nor does the minimal briefing provided in this case support the request. *See generally* Dkt. Nos. 10, 13. The appropriate remedy here is remand of a much

narrower scope. When a court finds that the record considered by an ALJ "does not support the agency action, . . . the agency has not considered all relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency *for additional investigation or explanation*," that is, not to consider the case anew. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (omission in original) (emphasis added). The purpose of remand is to "remedy defects in the original administrative proceeding" identified by the district court. *Garrison*, 759 F.3d at 1019 (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)). Plaintiff alleges only two errors, and the Court will remand for further proceedings consistent only with its findings related to the errors alleged.

V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED IN PART, and this case is REMANDED for further administrative proceedings consistent with this decision under 42 U.S.C. § 405(g). On remand, the ALJ is ORDERED to:

(1) develop the record regarding Plaintiff's cardiac health after April 2023;

(2) reevaluate Dr. Gray's opinion on Plaintiff's rest- or attendance-related limitations in light of the updated record;

(3) reconsider other evidence as appropriate in light of the updated record and Dr. Gray's reevaluated opinion; and

(4) incorporate rest- and/or attendance-related limitations into the RFC or, alternatively, explain why those limitations can be disregarded and support that explanation with substantial evidence.

Dated this 9th day of May 2025.

Tana Lin
United States District Judge